Good morning, Your Honors, and may it please the Court, I'm very happy to be here today in Pasadena, and if the Court doesn't have any questions at this time, I would ask to proceed. Go ahead. Thank you very much. This case involves parents who've lost custody of their children, and they've lost custody in family court, a court which has completely abandoned and abrogated the Constitution. Why can't your clients simply appeal in the state courts? I suppose they could do that. That's the normal way of dealing with constitutional errors or asserted constitutional errors, so what you're trying seems extraordinary. Well, I would add that in my experience, the California Court of Appeals has very much the same tack as the family court in that they completely – they're just not responsive to constitutional arguments. And what about the California Supreme Court or the U.S. Supreme Court? Well, the U.S. Supreme Court – well, that's – the odds of getting hurt are so much less. I suppose that would be an avenue, although – That's the normal course when you think your rights have been violated by a trial court's order. Yes, and I would agree with Your Honor, but I think the problem is so systemic that if one person were to appeal, we want to change the policy. Would you agree, Mr. Phillips, that all of the injuries alleged by your clients were inflicted by these state court judgments and orders? Well, I wouldn't characterize them as judgments. They are temporary orders. But in a civil case, when there's a wrongdoing and there's a judgment that's decided upon, it's decided whether or not a given right was – rather not a wrongdoing was committed in a typical civil judgment, like in a construction defect case. But it's always temporary when it comes to custody. So – Sure. But even custody orders that are temporary are appealable immediately, correct? No. Temporary orders are not appealable. Counsel, I have a different question, if I may. And that is, as I understand it, the Chief Justice is being sued in her official capacity as the head of the Judicial Council for alleged failure to train other judges. Why isn't she not a person within the meaning of Section 1983 because the Judicial Council is an arm of the state of California? Well, it's our position. We want to sue the policymakers for the current policy that's allowed the Constitution to be abandoned and not a specific act of a judicial act. I don't know if Your Honor's question was going towards immunity. It is going towards immunity, exactly. So why isn't that fatal to your claim? Well, because there's no judicial act in question. And it's really not the Chief Justice we're suing. We're suing the counsel as the party. Correct. And the counsel is an arm of the state of California entitled to sovereign immunity. Well, we believe that there's a different result under Hess, the 1994 Supreme Court case of Hess, which says that if a state agency is financially independent, meaning if they raise their own revenue and pay their own debts, then they're taken outside of the scope of immunity because they're considered independent of that. And so that's the argument under Hess. And all the cases on which our opponents rely conspicuously fail to match. Well, didn't we say in Cone that the Treasury element is only one part of it, but there's the dignity element for the state that we don't infringe on their dignity? And wouldn't suing the state be considered an infringement on their dignity? Well, I think it could be seen that way. But the reason I don't see it that way is because, well, I think there's a larger issue. What happens when an entire, what if the state of California, state court system, just said no more Constitution? Where would a litigant run to bring the Constitution back? How about the Supreme Court? Well, the Supreme Court may be a avenue, but it's. . . Let me try it at a little different angle. Suppose we affirm here and you think we've got it wrong, whether it's Rooker-Feldman or 1983 doctrines or whatever. Do you think you could file suit for damages or an injunction against the Federal Judicial Center and its board and its chair, Chief Justice Roberts? No, I don't believe so.  Because I believe that there would be immunity for the decision. It's a judicial act if the court rules against us. No, no, no. Not suing us, not suing the Ninth Circuit judges who were deciding the case, but the Federal Judicial Center trains federal judges like the State Council? Well, I would say no because I just don't think that there would be latitude to do that unless there's a policy. I agree, but I don't see the difference between this case and that hypothetical. Well, I think the difference is that. . . Well, I don't know if Hess, the Hess case, would apply to the federal judiciary. It would not. But I believe that it has applied to state agencies before to take the state agency outside the scope of Eleventh Amendment immunity. You're relying on the test that focuses only on an independent fiscal existence, right? Yes. Which the Ninth Circuit has rejected in its own. . . Well, I would add if I could. . . If we issued the injunction or if the district court issued an injunction that you've requested against the State Judicial Council, saying train trial judges differently, how would that change your clients' lives? Well, hopefully it would change for the better of everybody in California. How? Well, because they would have the benefits and protections of. . . It would be by the individual decisions of individual judges in individual cases, correct? Yes. And the harms that you're suffering are being inflicted allegedly by those same sorts of orders, individual decisions, individual cases, individual judges, right? Well, yes. Again, what's the mechanism for remedying the alleged harms by an injunction? Well, we believe that if the injunction is granted, we believe it would change the landscape for everybody and would also benefit these parents because family court cases go on until the youngest child is 18. So, presumably, they would be benefited in the long run except for those parents whose children. . . But assuming that the judges follow their training. Yes. And I would also add in the Cone case, the Cone case is conspicuously silent about Hess as well, and it seems like every time the Ninth Circuit rules on the Eleventh Amendment immunity, they completely ignore the words of Justice Ginsburg in the Hess case. And the Supreme Court ruling in Hess, we believe, is respectfully paramount to the Ninth Circuit decisions that hold to the contrary. I think we attempted to interpret Hess in Cone, but anyway. Do you want to reserve some time for rebuttal? Yes, I would, please. Thank you, Your Honors. Good morning. May it please the Court, Matthew Green on behalf of Chief Justice Guerrero. I think as Judge Hamilton indicated here, it is extraordinary what the appellants are attempting to do. They are attempting to hold the Chief Justice responsible for allegedly erroneous child custody orders. The clear remedy in this instance for appellants is to seek appellate review. Appellate review is available in child custody orders, including temporary orders, whether it's by writ relief or by filing appeal. That is the normal course. That is the process. I'm from Indiana. I'm the visitor here. Can you fill me in a little bit on where to look in California law on that appealability of temporary custody orders? I don't have a site for you, unfortunately, but it would be under the Family Code. But for instances where there isn't an immediate right of appeal, there is writ relief available, similar to coming to this court, writ relief is available. So if there is an emergency need, an urgency, irreparable harm, those sorts of things that can be shown, an aggrieved family court litigant can file, can seek writ relief in the California Court of Appeal. So there absolutely is an avenue. And ultimately, when a child custody order becomes final, there is absolutely a right of appeal in that instance, and that is the proper course. Oh, I'm sorry. Go ahead. No child custody order is ever really final, right, in the sense that it's always subject to modification.  But writ relief still remains available. I was just going to ask you if, in your view, Wolf remains good law after Cone, in the holding that there's immunity for the Judicial Council. Absolutely. I think this court ruled appropriately 21 years ago in Wolf v. Strengthman. The Judicial Council clearly, they directed and administered the judicial branch of government in California. They are clearly a state agency, as the court in Wolf held. Cone, two years ago, did modify the test for 11th Amendment immunity in determining whether an entity is a state agency. As Judge Bumate indicated, test was absolutely addressed in Cone. But the factors identified in Cone, intent, control, the financial relationship between the entity and the state, those all clearly support the conclusion that Judicial Council is a state agency. So today, if the court does apply Cone, the Judicial Council is clearly still a state agency, as it was 20 years ago. Can I ask, this doesn't seem to be a textbook case for the Rooker-Feldman, because as I see the relief, it's not overturning the child custody decision, but it's for training. So doesn't this take it out of Rooker-Feldman? Well, I think there is an argument that Rooker-Feldman does apply, because the underlying harm here is the allegedly erroneous child custody orders. And what's happening here really is an end run around, rather than couching a direct attack on a judgment, it's an end run around that to go to the Chief Justice and try to hold her and the Judicial Council responsible for these orders. It might be an end run, but it might take it out of Rooker-Feldman, though. It may. I still do construe it as being an attack on the child custody orders, and I do see the fact that they are seeking damages here based on the alleged deprivation of appellants and their children. So that might be part of Rooker-Feldman, but the injunctive relief might be taken out. Well, I think that there's still the argument that it does apply. I understand. If it does, if Rooker-Feldman does not apply to the injunctive relief, then you've got the problem of redressability that I was asking a colleague about. That is, how does an injunction against the Judicial Council do anything for these plaintiffs? Well, I agree with that. I think it sort of goes back to, I mean, typically in Rooker-Feldman you have a final judgment, and so there's then a collateral attack going to federal court. But here, I think, as you're alluding to, there's still the ability to seek redress in the court of appeal and directly for these plaintiffs to seek redress in whether it's reestablishing their custody rights or whatever the case may be. Rooker-Feldman can apply to interlocutory judgments that are appealable. Yes, this court has held that that is the case. So I think that you've got the issues here of the extraordinary relief that's being sought here, trying to hold the Chief Justice responsible for allegedly erroneous child custody orders, which is not available. There is no Section 1983 relief for that. Judicial Council is clearly a state agency. It is not a person under Section 1983. It is also protected by Eleventh Amendment immunity. Green, I've got a federal court's quiz for you here, and that is there are a number of different issues that we could potentially use to address this case. Is there a sequence that you think we should follow? I think probably, as I've outlined in my briefing, I think primarily Judicial Council is not a person under Section 1983. Tied to that is also Eleventh Amendment immunity. And from there, I think the other issue that's significant here is just the failure to state a claim on this failure-to-train theory is that, again, the proper course here is seeking relief. There are also, this is a supervisory liability type. Can I ask, if we reach the sovereign immunity question, why would we have to reach the person question under 1983? You wouldn't. If there's no immunity, that's the end. Excuse me, if Eleventh Amendment immunity applies, there is no other ground we'd be addressing. I think we have some case law that suggests that sovereign immunity challenges are threshold questions. That's correct. Whatever that means. It would resolve the case, and you would not reach any other issues. So I think the Eleventh Amendment immunity and whether a state agency is not being a person under 1983 are kind of connected issues. They are independent. So theoretically, you could address Eleventh Amendment immunity for- Those are both waivable, though, aren't they? You haven't waived them, but- The Eleventh Amendment, absolutely, it could be waived if we didn't raise it. If the state court case gets removed to federal court by a state agency, the state agency's waived it. But it has not been waived here. It was asserted on a motion dismissed. I'm just trying to distinguish between waivable and non-waivable subject matter jurisdiction. But that's the federal court quiz. Right. I think in the Eleventh Amendment, in the instance where it was waived, which is not the case here, there still would be the issue of a state agency not being a person under 1983. I think that would still be a problem and an impediment to suing a state agency in federal court. Unless your honors have any more questions, I will conclude. Thank you, Counsel. Thank you very much. Phillips? I did want to say, again, that the plaintiffs in this case are not challenging any specific judicial acts, but rather a policy which has led to the abrogation of the Constitution in the state's largest court system. Writ relief is available, but, again, my understanding is that there is no revenue to appeal a temporary order. And the temporary orders is generally how family court takes away children, is via temporary orders. Turning your honors' attention to the Wolfe case, the Wolfe case never cites Hess v. Port Authority. It never mentions a word state treasury criterion, and it never mentions financial independence test. And I also looked at the Cone case today, and I did a word search, Control-F, and the term Hess never appears. That is incorrect. As I read the case, it is discussed. The treasury factor, I mean, we might not have cited Hess by name, but it's been cited many different times by the Supreme Court, and it's definitely addressed in Cone. I wasn't excited in Cone, but, I mean, I still think they got that part right. Thank you, Your Honor. And as to the Rooker-Feldman, again, there's not going to be – this is not a final state court judgment that we would see in a civil action where the wrongdoing is either found to have happened or the wrongdoing is not found to have happened, but rather the whole idea of custody is a somewhat fluid concept as the children are bandied back and forth between the parents. And if an injunction were granted, I believe that the parents whose children have not aged out, the plaintiffs in this case, they would still benefit directly from it. Can you point us, Fannie? I'm sorry. Go ahead. I was going to say, wouldn't they benefit, if at all, only indirectly? Because what you're asking for is training and not specifically overturning any particular order. Well, I think that's true, yes. I believe the training would benefit them, though. I think that would. Can you point us to any precedent in which a federal court has issued an injunction to state courts telling them how to interpret the law, in essence giving them a lecture? Well, not necessarily. Well, we're looking not necessarily to the courts, but the policy makers, to the extent that's an important. Precedent for that. Well, I know that there's, I've seen many lawsuits with law enforcement when law enforcement officers have to be trained on Fourth Amendment. Talking about the courts. Federal courts treating state courts as junior partners or students. Right. Talking about the dignity of the states. And I'm just wondering if you have directives to any precedent for comparable treatment of the state courts by federal courts. No, I have no precedent on that, Your Honor. Okay, you're over time. You can wrap up. Okay, thank you very much. This case is submitted. Thank you.
judges: GRABER, Hamilton, BUMATAY